UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**
**MAR 3 1 2005**
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| CENTRIC GROUP LLC, D/B/A KEEFE SUPPLY COMPANY,        )<br>)<br>    Plaintiff,        )<br>)<br>vs.        )<br>)<br>SOJITZ CORPORATION OF AMERICA, INC., F/K/A NISSO IWAI AMERICAN CORPORATION,        )<br>)<br>**TO BE SERVED BY PROCESS SERVER**        )<br>)<br>SERVE:<br>Officer, Partner, Managing Agent, General Agent, Person in Charge or Mr. Yoshiyuki Honda, Senior Manager<br>1121 Avenue of the Americas<br>New York, NY 10036-8880        )<br>)<br>MOKOH & ASSOCIATES, INC. A/K/A MOKOH CORPORATION,        )<br>)<br>**REQUESTING WAIVER OF SERVICE**        )<br>)<br>SERVE:<br>Mr. Sou Zen Mo<br>The Manager Concerned<br>and the General Manager<br>8F, No. 35<br>Lane 221<br>Kang-Chien Road<br>Neilm Taipei, Taiwan        )<br>)<br>ST4M CORPORATION,        )<br>)<br>**TO BE SERVED BY PROCESS SERVER**        )<br>)<br>SERVE:<br>Officer, Partner, Managing Agent, General Agent, Person in Charge or Mr. JJ Lo<br>3448 Depot Road<br>Hayward, CA 94545        )<br>)<br>    Defendants.        ) | No. **4:05CV00522AGF**<br><br>**JURY TRIAL DEMANDED.** |

## COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

COMES NOW Plaintiff Centric Group LLC, d/b/a Keefe Supply Company ("Plaintiff") and for its cause of action against Defendants Sojitz Corporation of America, Inc., f/k/a Nisso Iwai American Corporation (hereinafter referenced as "Seller Nisso"), Mokoh & Associates, Inc. a/k/a Mokoh Corporation (hereinafter referenced as "Manufacturer Mokoh"), ST4M Corporation (hereinafter referenced as the "Service Agent ST4M") hereby states as follows:

### Parties

1. Plaintiff is a limited liability company organized and existing under Delaware law with its principal place of business located in the State of Missouri. Plaintiff's members consist entirely of individuals who are citizens of Missouri and trusts, all of the trustees of which are citizens of Missouri. Plaintiff is solely a citizen of Missouri for jurisdictional purposes.

2. Upon information and belief, Seller Nisso is organized and existing under New York law, with its principal place of business in New York, and solely a citizen of New York for jurisdictional purposes. Upon information and belief Seller Nisso has no office or agent in the State of Missouri.

3. Upon information and belief, Manufacturer Mokoh is a corporation organized and operating under the laws of Taiwan, with no office or registered agent in the State of Missouri, and solely a citizen of Taiwan for jurisdictional purposes.

4. Upon information and belief, Service Agent ST4M is a corporation organized and existing under California law, with its principal place of business in California, and solely a citizen of California for jurisdictional purposes. Upon information and belief Service Agent ST4M has no office or registered agent in the State of Missouri.

**Jurisdiction and Venue**

5.  As noted hereinafter the amount in controversy, exclusive of interest and costs, exceeds $75,000. Jurisdiction is proper under *inter alia* 28 U.S.C. §§ 1332(a)(1), 1332(a)(2), 1332(a)(3) and 1367.

6.  Jurisdiction and venue in this Court also are proper because:

    a.  The contract at issue herein was negotiated in whole or in part in St. Louis County, Missouri, United States of America;

    b.  The contract at issue herein was executed in St. Louis County, Missouri, United States of America;

    c.  Performance of the contract at issue herein was to occur in whole or in part in St. Louis County, Missouri, United States of America;

    d.  The products manufactured and shipped pursuant to the contract at issue were shipped to and stored in St. Louis County, Missouri, United States of America;

    e.  All parties to the contract at issue were aware of and anticipated the negotiation, execution, and performance of said contract in and to St. Louis County, Missouri, United States of America; and

    f.  The contract at issue explicitly provides that "the Circuit Court of St. Louis County, Missouri and/or the United States District Court for the Eastern District of Missouri in St. Louis, Missouri shall be the exclusive forums for resolutions of any dispute or controversy arising out of the execution, performance, or termination of [the contract at issue] or arising out of the relationship of the parties [thereto]."

7.  Upon information and belief, none of the Defendants have an office or agent for the transaction of their usual or customary business in the State of Missouri.

8.  Upon information and belief, none of the Defendants have a registered agent for service of process located in the State of Missouri.

**Claims**

9.  In mid to late Summer 2003, Plaintiff began to negotiate with Defendants regarding the manufacture and sale of digital video disc players (hereinafter referenced as "DVD players") in correctional facilities throughout the United States.

10. Plaintiff's role in connection with the sale of the DVD players was that of a distributor.

11. Defendants each were merchants with respect to the goods at issue in this case.

12. Pursuant to and in accordance with those negotiations, Plaintiff issued an initial Purchase Order on or about October 14, 2003, which was to be and is subject to the terms and conditions subsequently memorialized in the form of a Distributorship Agreement executed by Plaintiff and all Defendants on or about February 7, 2004.

13. Pursuant to the initial Purchase Order the Manufacturer Mokoh was to manufacture and sell to Seller Nisso the DVD players that were the subject of the Purchase Order. Seller Nisso then would sell the DVD players to Plaintiff so as to cause the DVD players at issue to be in Plaintiff's physical possession by December 31, 2003.

14. Manufacturer Mokoh and Seller Nisso failed to manufacture and deliver to Plaintiff any DVD players by December 31, 2003.

15. Despite Plaintiff's reasonable accommodations, Manufacturer Mokoh and Seller Nisso still did not effect the delivery to Plaintiff any of the DVD players referenced in the initial Purchase Order until March 26, 2004.

16. Within days of receiving said DVD players Plaintiff conducted random spot checks for quality assurance. At that time, based on our random inspections, the DVD players seemed to be merchantable.

17. However, unknown to Plaintiff at the time, the DVD players in fact had been "manufactured" in at least two separate "lots." In fact, one lot was remanufactured out of existing inventory – which involved among other things disassembly and reassembly of those DVD players and extra shipping. Though both lots contained some DVD players with latent defects, it now appears that this remanufactured lot had an extremely high incidence of defects.

4

18. At all times relevant hereto, including and without limitation all negotiations regarding the Distributorship Agreement, all parties contemplated and implied that the goods that would be provided for sale to Plaintiff's customers would be new goods manufactured for that purpose. Defendants never discussed with Plaintiff the use of remanufactured goods in connection with the parties' agreement, Plaintiff never anticipated any such use of remanufactured goods, and to date Defendants have refused even to inform Plaintiff of the age or history of the remanufactured goods.

19. Plaintiff did not learn of the existence of the two distinct lots, or that a portion of its shipment actually was remanufactured from existing inventory, until December 2004. However, now having that information it appears that the DVD players that were the subject of Plaintiff's random spot checks were predominantly if not entirely from the "good lot."

20. Moreover, even in the "bad lot" the majority of the defects were latent and were not reasonably discoverable upon inspection but which, as noted below, manifested themselves shortly after the units were sold.

21. Had Defendants timely advised Plaintiff that there were two lots of DVD players and distinguished in some manner between the lots, Plaintiff would have stratified its random inspections so as to ensure that both lots were sampled adequately. However, Defendants did not so inform Plaintiff until around December 2004.

22. The defects with Defendants' DVD players were particularly harmful to Plaintiff. Sales to correctional facilities require much more lead time than do sales to regular commercial outlets in light of the substantial screening and security procedures that a seller must meet before their products are permitted to be sold within correctional facilities.

23. In fact, it can often takes 90 days or more to secure particular product approval at an institution after a product is available to the particular institution for inspection.

24. Thus, in this case, because of Defendants' nearly 3-month delay in getting the DVD players to Plaintiff, it was not until early July 2004 that Plaintiff first was able to offer those DVD players for sale in any correctional facilities in the United States.

25. Plaintiff nevertheless moved with dispatch to obtain approval for and begin the sale of the DVD players in correctional facilities.

26. Shortly thereafter Plaintiff began to receive complaints about latent defects in the DVD players including but not limited to complaints that: (a) the DVD players did not work at all; (b) the DVD players would not turn on; (c) the buttons on the DVD players did not work; (d) the DVD players had no picture; and (e) numerous other miscellaneous problems.

27. Plaintiff immediately began to attempt to work with Defendants to resolve those problems and preserve the relationship among the parties. There were numerous e-mail and telephonic communications between the parties, transfer and inspection of DVD players that had been returned due to defects, and attempts to correct the same. Yet, despite all of Plaintiff's best efforts to resolve the problems, and despite all of its contacts with and correspondence to the Defendants, Defendants did nothing other than to deny having any responsibility for the defective products and, indeed, to conceal information necessary to determine the cause of the defects (such as the distinction between the lots, the modification of existing inventory, etc.).

28. By early October 2004 the defect rate and nature of the complaints about the DVD players that Plaintiff had received from its customers suggested that there were systemic problems with the quality and merchantability of the entire shipment of DVD players.

29. During all this time Plaintiff was suffering an increasing loss of goodwill with its correctional facility customers, with whom Plaintiff conducts other business independent of the sale of DVD players. Plaintiff's ability to bid for contracts regarding the sale of other products to these large clients was being compromised and commercial pressures were requiring that

6

Plaintiff take some action immediately to remedy the problem caused by Defendants' defective DVD players.

30. Despite Plaintiff's good faith efforts to resolve the problems with the DVD players, Defendants were unable to remedy the same in a commercially reasonable manner.

31. By letter dated October 25, 2004 and sent to all parties to the Distributorship Agreement, Plaintiff cancelled the order in question, tendered back the DVD players that were the subject of Plaintiff's initial Purchase Order and demanded a full refund for the same.

32. In addition, Plaintiff was forced to attempt to obtain cover in order to attempt to preserve its relationships with its correctional facility clients and minimize the damages to Plaintiff resulting from the unmerchantable DVD players supplied by Defendants.

33. As a result of the aforesaid Plaintiff has suffered damages in amounts in excess of $330,000 but not currently known and which will be shown at trial including but not limited to lost sales, the lost profit on those sales in the amount of approximately $54,750.00, damage to its reputation (including lost bids for the sale of other products to the same institutions in an amount of approximately $90,000.00), the costs associated with its attempts to obtain cover, the sale price associated with the initial Purchase Order at issue herein together with various consequential and incidental damages associated with such things as stocking costs, warehousing costs, promotion expenses, costs of inspection and other similar expenses associated with the defective DVD players at issue herein including without limitation $3,100.00 in labor and costs associated with the returned units.

34. To the extent that it did not already effect the same Plaintiff formally rejected the DVD players at issue and revoked any purported acceptance of the same in writing by letter to all parties to the Distributorship Agreement dated December 6, 2004.

35. Nevertheless, notwithstanding the above, Defendants have refused and continue to refuse to refund Plaintiff its purchase price of $182,500.00.

36. The purchase price at issue is a liquidated amount and prejudgment interest should accrue with respect to the same at the maximum rate permitted by law from October 25, 2004.

WHEREFORE, Plaintiff hereby requests that judgment be entered in Plaintiff's favor and against Defendants jointly and severally:

(a) declaring the Distributorship Agreement cancelled;

(b) awarding Plaintiff damages in the amount of at least $330,000 plus its incidental and consequential damages in an amount currently unknown and to be proven at trial;

(c) awarding Plaintiff prejudgment interest at the maximum rate allowed by law from October 25, 2004 on at least the $182,500 purchase price;

(d) ordering Defendants to retrieve all of the DVDs now in Plaintiff's possession at Defendants' own expense and with no costs to Plaintiff within thirty (30) days of the date the judgment in this case becomes final;

(e) ordering Defendants to remove at Defendants' own expense all references to Plaintiff (including all references to Access Catalog Company) from any and all units that they retrieve in accordance with the preceding paragraph, including the removal of all references to Plaintiff (including all references to Access Catalog Company) from all packaging and all other materials before Defendants may dispose of or resell the same;

(f) declaring abandoned each and every DVD player that Defendants have not retrieved as set forth herein;

8

    (g)    declaring that Plaintiff may destroy or sell for salvage value each and every DVD player that Defendants have not retrieved as set forth herein with no obligation or liability whatsoever to Defendants;

    (h)    awarding Plaintiff its costs incurred herein; and

    (i)    awarding Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

BY: _____
Patrick J. Kenny    #35337
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)

ATTORNEYS FOR PLAINTIFFS